## Newcomet *versus* Brotzman.

1. Ordinarily when partners sell out to a stranger, no notice of dissolution is necessary to one dealing with the purchaser.

2. The fact that the purchaser had not been a partner and is doing business for himself, is notice of the dissolution, even to a former dealer with the firm.

3. Newcomet was a member of a firm: his son attended to the business for him, he not being at the store, and the son receiving his share of the profits; he bought out his partners and gave the whole to his son, one of the former partners remaining as clerk, and the business being apparently conducted as before. The plaintiff dealt with the son as before, and charged his sales to the firm. The court below charged that the plaintiff was not affected with notice of the change. *Held*, not to be error.

4. Newcomet having failed to inform those dealing at the store of the change, his silence under the circumstances was calculated to mislead, and he was therefore estopped from denying that the dealing was with the firm.

5. Before the change, checks had been given in the name of the firm'; afterwards they were in the name of the son. The court charged that this was cogent but not conclusive evidence of notice. *Held*, to be correct.

May 18th 1871. Before READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Lebanon county* : No. 14, to May Term 1871.

This was an action of assumpsit brought by George Brotzman against Samuel Newcomet, trading as Newcomet & Co., to recover for goods sold and delivered by the plaintiff for which he alleged

[Newcomet *v.* Brotzman.]

the defendant was liable. The defence was that the goods had been sold to W. W. Newcomet, a son of the defendant, and not to the defendant.

The cause was tried, January 11th 1870, before Pearson, P. J. The facts in the case will appear as intelligibly and concisely in the following charge of Judge Pearson as they can be presented by any synopsis of the evidence.

\* \* \* "The plaintiff originally dealt with the firm of Albert & Co., in this same store. That firm consisted of John Albert, Jerry White and Peter Lutz. Albert sold to Samuel Newcomet, a farmer living some thirty miles from Pottsville, where the business was conducted, who placed his son in the store under an arrangement that he was to have one-third of the profits, being the father's whole share thereof. The business was managed by W. W. Newcomet, Lutz and White, for some time, the plaintiff dealing with them as Newcomet & Co., when S. Newcomet bought out the other two, and gave the whole store and business over to W. W. Newcomet, after which the plaintiff continued to supply the establishment with produce as before, until the present account had accumulated. Lutz was retained as a clerk. The plaintiff avers that he was not aware of any change in the firm, but supposed that S. Newcomet continued a partner as before. His accounts were all kept against Newcomet & Co., as previously. On the other hand, it is contended he had actual notice, as stated by Lutz, that W. W. Newcomet was sole owner; and constructive notice in the change of form of the checks given in payment from time to time. The question of actual notice is one of fact, depending on the testimony of Lutz, who swears he told the plaintiff within a few days after the dissolution, and named certain persons who were present at the time. The plaintiff positively denies having any such conversation until after the failure of W. W. Newcomet. The other men referred to by Lutz, deny it also. The question is for the jury, and if actual notice was given, the debt incurred after that time cannot be recovered.

"It is contended that there is conclusive evidence of notice that the firm of Newcomet & Co. was dissolved by the change in the form of checks received from time to time by the plaintiff. Originally they were drawn in the name of Newcomet & Co., and afterwards in the name of W. W. Newcomet. This we say is strong and cogent evidence of notice, might almost be called *constructive notice*, which would be equivalent to actual; but we are not prepared to say that it is *conclusive evidence of notice* with the case of Deford *v.* Reynolds, 12 Casey 325, before us. It is a question for the jury. The plaintiff testifies that he never noticed the change; had been in the habit of receiving the checks drawn by Lutz before presenting them to the bank, and drawing the money, and received them in the same way afterwards, and ob-

[Newcomet v. Brotzman.]

tained the money on them without reading. Such a course of business is evidence of great carelessness by the plaintiff, but we are not prepared to say that it is conclusive of notice. It is, as we said, strong and cogent evidence thereof. It is possible that as S. Newcomet had never transacted any business in the store, and W. W. Newcomet always had, even if Brotzman had read the checks it might be that he supposed the son was using his own name instead of that of the father, without any change in the firm. The objection to that is that there would have to be an alteration in the bank account, or the bank pay on a wrong name, which is unlikely. This, with the answers to defendant's points, will sufficiently inform the jury as to the law of the case.

"1. As between the partners, the facts disclosed that W. W. Newcomet was to have one-third of the profits of the business—being the whole of his father's share thereof,—will not make him a partner. It is not necessary for us to decide how it could be as to a creditor of the firm, as *he* is not the party sued, and no allegation that credit was given on his account.

"2. If one member of the firm bought out the other two, notice of the dissolution was necessary in order to protect the retiring partners from responsibility. If all three sold to a new man no notice is ordinarily necessary. If one bought from the others, and then sold, or gave away the whole stock to a new man, no notice is generally required for his protection. But where the three had been in partnership, Samuel Newcomet not there, but his name used, and his son, W. W. Newcomet, acting for him and doing the business of the store, and by agreement to receive his share of the profits, and after Samuel bought out White and Lutz he gave the whole to his son, who continued with Lutz as his clerk to carry on the business ostensibly as before; no outside change made in the manner of conducting it, all done and carried on by the same men, it was well calculated to deceive those who had dealt with them, and therefore notice was proper, and perhaps necessary, to protect the retiring partners, lest others should continue to trust them as before the dissolution, and be deceived and misled. If such was actually the case, and the credit given on the faith of Samuel's known responsibility, we think he had not taken the proper course to notify their former creditors. It is left to the jury to decide whether the plaintiff had notice, or was actually misled by the method of conducting the business.

"3. The effect of the change of the checks is sufficiently explained in the general charge. We have said that it is strong and cogent evidence of notice.

"We do not think that the case turns on the fact of actual partnership, but upon the plaintiff's testimony from their mode of doing business that Samuel Newcomet was still the owner of the

[Newcomet *v.* Brotzman.]

store, and the credit given on the faith of his supposed responsibility."

The verdict was for the plaintiff, for $535.01.

The defendant took a writ of error and assigned for error the answers to his 2d and 3d points, found at the conclusion of the charge.

*J. Funk*, for plaintiff in error.—The change in the checks was sufficient to put the plaintiff on inquiry, and therefore notice of all he could have learned by the inquiry: Collier on Part., § 533; Barfoot *v.* Goodall, 3 Camp, 147; Brightly's Eq. Jur., § 116; Story Eq. Jur., § 399; Taylor *v.* Stibbert, 2 Ves. Jr. 437; Hunburry *v.* Litchfield, 2 Myl. & K. 633; Beance *v.* Muter, 3 Moore P. C. Cas. 69; Sadler *v.* Lee, 6 Beav. 324; Cothay *v.* Sydenham, 2 Bro. C. C. 391; Att.-Gen. *v.* Backhouse, 17 Ves. 293; Whitbread *v.* Jordon,1 Y. & C. 329; Hatch *v.* Searles, Sm. & G. 147; Zollar *v.* Janvrin, 47 N. H. Rep. 326; Kennedy *v.* Green, 3 Myl. & K. 719–21–22.

*W. M. Derr* (with whom was *A. R. Boughter*), for defendant in error.—A partnership once entered into is presumed to continue as to third persons, until notice is given: Thurston *v.* Perkins, 7 Missouri 29; Princeton and Kingston Turnpike Co. *v.* Gulick, 1 Harr. 161; Collier on Partnership, §§ 120, 530; Williamson *v.* Fox, 2 Wright 214; Deford *v.* Reynolds, 12 Casey 325.

The opinion the court was delivered by

AGNEW, J.—This is a peculiar case, and was decided on its own circumstances. Ordinarily, when partners sell out to an entire stranger, no notice of the dissolution would be necessary to a person dealing with the purchaser. The very fact that he had not been a partner, and is doing business for himself, would be notice of the dissolution even to a former dealer with the firm. But in this case Samuel Newcomet, the party sued, was a member of the company. He had never transacted its business in person, but had placed his son, William W. Newcomet, there, giving him his own share of the profits; and when he bought out his partners and gave the business to his son, the latter continued transacting business apparently as before, retaining one Lutz, who had been a partner, as his clerk. No new sign was put up, and there was no visible change. The plaintiff, unaware of the change in the ownership, dealt with W. W. Newcomet, as he had been accustomed, and charged his goods to the firm of Samuel Newcomet & Co., under a belief that the firm continued. The court below held that under these circumstances the plaintiff was not affected by the change in the ownership of the store without actual notice, or the proof of such facts as warranted the belief

[Newcomet v. Brotzman.]

of knowledge. We cannot say this was an error. But the case rests rather on the principles of equitable estoppel, than upon the special rule as to the dissolution of a partnership. When a dissolution takes place and the creditor continues to deal with one who has been a member of the firm, he is apparently dealing with the partnership, if not informed of the withdrawal of the retiring partner; for he deals with one having had authority to act for all the partners. But here the person with whom he dealt was no partner, and in that respect it cannot be said that the authority which a member has to bind his partners is brought into play; and therefore it cannot be said he was apparently acting for the firm. Hence, this case must be rested on facts which equitably estop Samuel Newcomet from settling up the sale or gift of the store to his son. The relation of Samuel Newcomet to W. W. Newcomet was such as to induce persons to believe that the son, who had been the agent of the firm, continued acting in that relation. Not only was there the relationship of consanguinity to produce this belief, but that entire trust which led the father not to act himself in the business, but to delegate it wholly to his son. Without being informed, no one could distinguish between the business as done by the son before the sale and as done afterward. Those who had dealt with the firm through him, could not know that a different relation had been assumed by him. The father clearly owed them a duty to speak out, and to inform them of the change, if he would cast responsibility off himself. His silence was calculated to mislead, he must have known it, and if the testimony of the plaintiff be believed, it did mislead him. Had the plaintiff not dealt with the firm before, he could not claim notice of the change as a duty to him. But when Samuel Newcomet gave the store to W. W. Newcomet he knew that those who had dealt with the firm would be likely to return, and might give credit to his son as the agent of the firm, unless informed that his authority had ceased. His silence, therefore, when he ought to speak out, was likely to mislead, and he cannot now complain of a liability begotten by his own negligence.

After W. W. Newcomet commenced business on his own account, he made payments to the plaintiff in his own checks. The plaintiff swears that he did not observe the change in the checks, and continued to deal, as he supposed, with the late firm. The court instructed the jury that this change in the form of the checks was strong and cogent evidence of notice of the change in the business, but declined to say it was conclusive. To have taken the question of notice from the jury by instructing them that notice was a conclusive legal presumption, from the form of the check, would have been an error. The surrounding circumstances made it clearly a question for the jury, and not for the court. We must not forget, at this point in the case, that in the

[Newcomet *v.* Brotzman.]

absence of actual notice, or knowledge, the estoppel had been made out. When the plaintiff took the checks, he took them as payment of a debt of the firm of Samuel Newcomet, as he believed, and not of W. W. Newcomet. Why the latter gave his own checks did not concern him very much. He was just as likely as not to suppose it was attributable to some arrangement for the convenience of the firm, which had intrusted the business to W. W. Newcomet. Hence, it would not do to hold that the form of the check created a conclusive legal presumption of knowledge. The court gave it its full effect in saying that it was strong and cogent evidence of notice. It was still a question for the jury, in view of the surrounding circumstances, which had misled the plaintiff. Being under their influence, his thoughts were likely to be diverted from the mere form of the payment. The court gave sufficient force to the evidence, and we find no error in it.

Judgment affirmed.