## Clark *versus* Fletcher.

1. F., who was a member of an association doing a banking business in the name of the Titusville Savings Bank, and who was advertised as a director thereof, transferred his interest to another person and withdrew from the association. No notice was given to the public of his withdrawal other than merely dropping his name from the published list of directors. Afterwards, C., who knew that F. was a director and had seen his name advertised as such, but who had no notice of his withdrawal, made deposits in the bank, which failed. He brought suit against F. to recover his deposit : *Held*, that he was liable.

2. In the absence of notice, express or implied, to the plaintiff, defendant was liable.

3. The defendant having been published to the community as an active partner, and having been known as such to the plaintiff before he commenced dealing with the bank, it was incumbent on the defendant to give more satisfactory evidence of notice of withdrawal than the mere dropping of his name from the published list of directors.

4. Per Sterrett, J.—When a partnership is formed and an artificial name, such as usually employed to designate a corporation is adopted, it must be regarded as an invitation to give credit, not to the empty name but to the individuals who compose the association thus designated, and hence none of the partners can properly claim to be dormant partners.

November 22d 1880.    Before Mercur, Gordon, Paxson, Trunkey, Sterrett and Green, JJ.    Sharswood, C. J., absent.

Error to the Court of Common Pleas of *Crawford county :* Of October and November Term 1879, No. 232.

Assumpsit by John R. Clark against Ruel D. Fletcher, surviving partner of William T. Neill, copartners, lately doing business as the Titusville Savings Bank.

In the fall of 1868 several persons formed a partnership by agreement in writing to carry on the business of banking at Titusville, under the firm name and style of " Titusville Savings Bank." The association continued to transact a general banking business until September 1873, when it failed. The defendant was a member of the partnership until some time in 1870, and was advertised as a director of the bank in the" Titusville Herald," until the 5th of September 1870. The plaintiff knew that the defendant was a member of the firm, had seen his name advertised as one of its directors, and had received no notice of his withdrawal therefrom. The plaintiff deposited various sums of money in the bank between the 7th of January 1871, and the 1st of July 1872. This action was brought to recover a deposit. Another action was brought against other members of the firm but no money was collected. The plaintiff offered to prove the amount of money deposited by him in the bank, which offer the court rejected.

·In the general charge the court, Church, P. J., said :

" We have rejected the evidence of the debt of the Titusville Savings Bank to John Clark. We have forbidden the plaintiff to prove the allegation that the savings bank owed a debt to John

[Clark *v*. Fletcher.]

Clark, because Clark did not begin doing business with the bank until January 1871, and Fletcher actually went out of the co-partnership in February 1870, according to the plaintiff's own evidence.

["So far as the public, who had never done business with the bank, were concerned, by the dropping of his name as an advertised director and stockholder in this bank, he ceased to be such director and stockholder as to such public, provided, of course, he actually ceased to be interested in the bank.]

["Inasmuch as plaintiff's offer was to prove that the inception of the bank's indebtedness to the plaintiff was in January 1871, and he does not offer to prove that the defendant actually was a stockholder at that time, or that he, the plaintiff, ever therefore heard that such was the case, the plaintiff never was actually deceived, and cannot, under the law of partnership, hold the defendant for this debt.]

"Your verdict will therefore be for the defendant."

Verdict for defendant, when plaintiff took this writ alleging that the court erred (first assignment) in rejecting the plaintiff's offer, and (third and fourth assignments) in the portions of the charge in brackets.

*John J. Henderson* and *Thomas A. Morrison*, for plaintiff in error.—The defendant was a partner in a firm doing business in the name of the "Titusville Savings Bank," and as such was individually liable for the debts of the firm. He was not a "secret" partner, and is, therefore, to be treated as generally liable: Shamburg *v*. Ruggles, 2 Norris 148. The business of the firm was carried on in the same name during the whole time of its existence; the plaintiff knew that the defendant was a member of the firm and had no notice of his retirement therefrom. The plaintiff should have been allowed to prove his claim, therefore, without reference to the question whether the debt was contracted before or after the defendant's withdrawal. In order to avoid liability for debts contracted after dissolution of the firm, or after his retirement therefrom, it was necessary for the defendant to give notice of that fact; personal notice to those who had previously dealt with the firm, and notice by advertisement to all others. In default of such notice he will be considered as still a member of such firm: Watkinson *v*. Bank of Pennsylvania, 4 Whart. 482; Brown *v*. Clark, 2 Harris 476; Deford *v*. Reynolds, 12 Casey 325; Shamburg *v*. Ruggles, 2 Norris 148; Goddard *v*. Pratt, 16 Pick. 432; Pitcher *v*. Barrows, 17 Pick. 361; 3 Kent's Com. *68; Davis *v*. Allen, 3 N. Y. 168; Martin *v*. Searls, 28 Conn. 43; Simmonds *v*. Strong, 24 Vt. 642.

*Guthrie & Byles*, for defendants in error.—The publication of
15 Norris—27

[Clark *v.* Fletcher.]

Fletcher's name as a director could at best create but a presumption that he was a stockholder, and the same means that gave plaintiff that information also gave him information that he ceased to be published as a director long before plaintiff commenced business with the bank, and it would be but fair to presume then that he was neither stockholder nor director. The one presumption rebuts the other. Plaintiff says he was taking the "Herald" at the time this case was tried, and had taken it from the time it was first published. If notice to the plaintiff was necessary, he had it, but we contend that it was not necessary. Fletcher was but a *secret, silent* partner. The name of the bank did not disclose his name nor a name with his appended, and when he sold his stock, February 7th 1870, and withdrew from the bank, no notice was necessary to relieve him from future liability, and particularly to parties who had not previously dealt with the bank. It is well settled that a silent partner may retire, and no notice is necessary to relieve him from liability to subsequent creditors of the firm. Some of the cases cited by plaintiff, and many others, hold this doctrine.

Mr. Justice STERRETT delivered the opinion of the court, January 3d 1881.

It may be regarded as well settled that when an ostensible or known member of a co-partnership retires therefrom, and wishes to shield himself from liability for future debts of the firm, it is necessary that personal notice of his withdrawal be given to all who have had dealings with the firm, and that notice be given, by publication or otherwise, to all others. The general principle, as broadly stated, in Watkinson et al. *v.* The Bank of Pennsylvania, 4 Whart. 482, is that publication of the dissolution in one or more newspapers printed in the city or county where the partnership business is carried on is, *per se*, notice to all persons who have not had previous dealings with the partnership; but, as to those who had such dealings, it is not sufficient. Partners who are strictly dormant, and unknown to those who transact business with the firm, and who therefore lend no credit to the partnership, form an exception to the general rule. While they are of course responsible for liabilities of the firm incurred during their connection with it, they are not liable for debts contracted after they have withdrawn from the partnership, although notice of such dissolution may not have been given to the public or those with whom the firm has had previous dealings: Deford & Co. *v.* Reynolds, 12 Casey 325; Shamburg *v.* Ruggles, 2 Norris 148. In the first of these cases, Mr. Justice STRONG says: "The rule doubtless is that an unknown dormant partner may retire from the firm without giving notice of his retirement, and thenceforth be no longer liable for debts which the firm may incur. Having ceased to be a partner in fact, he is

[Clark v. Fletcher.]

not a party to the contract which creates the debt; and, being unknown, he has not encouraged the creditor to rely upon his responsibility." The distinction between a dormant or silent partner, as he is sometimes called, and·an ostensible or known partner, and the reason why notice of the withdrawal of the latter and not of the former is essential in order to shield the retiring member from liability for future debts of the firm are clearly pointed out and explained in the two cases last cited. When a co-partnership is formed and an artificial name, such as is usually employed to designate a corporation, is adopted, it must be regarded as an invitation to give credit, not to the empty name, but to· the individuals who compose the . association thus designated, and hence none of the partners can properly claim to be dormant. They are all, presumptively at least, known partners and liable as such. But, in the present case, it is unnecessary to invoke this principle, for the reason that during several months prior to the transfer of his stock, and his alleged withdrawal from the firm, the defendant was not only an ostensible but an active member of the partnership. His name was published as a director of the Titusville Savings Bank—the name by which the partnership was designated—and this fact was known to the plaintiff before he commenced depositing in the bank. Being then a shareholder and partner in the bank, actively participating as a director in its management, and these facts being not only published to the community, but personally known at the time to the plaintiff, how can the defendant, upon any recognised principle, expect to escape liability for debts of the partnership contracted after his withdrawal therefrom, without showing that due notice thereof was given ? It is not pretended· that express notice of his withdrawal was given, but it is claimed that it might be inferred from the fact that his name was dropped from the published list of directors. This, however, was insufficient, for while the dropping of his name from the board of directors might justify the inference that he had ceased to take an active part in the management of the partnership business, it would by no means follow that he had ceased to be a shareholder and partner. Having been· published to the community as an active partner, and having been known as such to the plaintiff before he commenced dealing with the bank, it was incumbent on the defendant to produce more satisfactory evidence of notice than the mere dropping of his name from the published list of directors. In Brown v. Clark, 2 Harris 469, Mr. Justice BELL says : " To visit the community at large with the consequences of a dissolution by assent of the parties the evidence of it should be clear, distinct and unambiguous. It is not to be left to mere conjecture or the hazard of possible inferences. The nature of the notice required to charge strangers with knowledge shows this. It must be shown that notice was communicated in some way or other. To reach those who have before dealt with the firm, direct

and express notice of the fact is essential.    To those before uncon-
nected with the association, it may be communicated by publication
in the proper newspapers.    The latter species of notice is only
tolerated from necessity, but yet like the other it is bottomed upon
an open avowal, by the parties themselves, of their agreement to
dissolve."

It follows from what has been said that the learned judge erred
in excluding the plaintiff's offer to prove the amount of money
deposited by him in the bank, and in charging the jury as com-
plained of in the third and fourth specifications of error.

Judgment reversed and a *venire facias de novo* awarded.