Ruberoid Company, Appellant, *v.* Patterson et al.

Argued April 29, 1941.

Before KELLER, P. J., BALD-
RIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

*J. Roland Johnston,* with him *Thorp, Bostwick, Reed & Armstrong,* for appellant.

No appearance was made nor brief filed for appellee.

OPINION BY STADTFELD, J., July 2, 1941:

This is an action in assumpsit for goods sold and delivered pursuant to a sales contract of June 1, 1939.

Plaintiff's statement of claim and amendments thereto averred that the defendants, W. Graham Patterson, John P. Cronin, Arnold V. Hilquist and A. M. Brecken-ridge, were partners doing business as the Pittsburgh House Insulating Company; that Hilquist, acting for and on behalf of himself and the other defendants within the scope of the partnership business, entered into an oral contract with the plaintiff company for the sale and purchase of certain merchandise in the amount of $424.78; that a written memorandum of the contract was made and dated June 1, 1939, and signed by the said Hilquist on behalf of the defendant company; that on or about June 14, 1939, the goods were delivered to the defendants; and that the defendants have refused and failed to pay for them.

The defendant, W. Graham Patterson, filed an affi-

davit of defense denying that he was a partner in the defendant company on June 14, 1939 (the date of shipment of the goods). The defendant, John P. Cronin, filed an affidavit of defense admitting that he, Patterson and Hilquist had been partners in the defendant company, but averring that the partnership had been dissolved prior to the contract date and that plaintiff had knowledge of the dissolution. The defendant, A. M. Breckenridge, was not served with a summons. The defendant, Arnold V. Hilquist, failed to appear or answer and judgment was taken against him by default.

Evidence produced at the trial of the case was to the following effect: that on June 1, 1939, a Mr. Hoele, an agent for the plaintiff company obtained an order for a carload of material manufactured by that concern; that the order was signed "Pittsburgh House Insulating Co., Arnold V. Hilquist"; that the material was shipped June 14, 1939 via Pennsylvania Railroad and delivered at Wilkinsburg, Pa., June 17 to "Pittsburgh House Insulating Co., by Arnold V. Hilquist", who signed for it; and that the value of the shipment was $424.78.

To establish the existence of the partnership, plaintiff company called as a witness, its agent, Mr. Hoele, who testified that he had contacted the Pittsburgh House Insulating Company at its place of business in Wilkinsburg on several occasions prior to June 1, in an effort to sell material. These contacts were made on March 3, March 28 and April 14, 1939, at which times he interviewed Patterson, Hilquist and Cronin, respectively, for the purpose of soliciting business. At the interview with Patterson, prices of material were discussed. Upon the occasion of his second interview, plaintiff's agent talked with Hilquist who knew of the prior meeting with Patterson. At this time, no order was placed by Hilquist. When plaintiff's agent subsequently contacted Cronin, the latter knew of the previous meetings with Patterson and Hilquist. At this meeting, Cronin

discussed with plaintiff's agent, the question of sales help that the plaintiff company might give the Insulating Company if the latter purchased plaintiff's product.

When called by plaintiff as for cross-examination, Cronin testified that he, Patterson and Hilquist were partners doing business as the Pittsburgh House Insulating Company in August, 1938, and that the partnership was in existence on March 3, and on March 31, 1939. Thereupon, defendants' counsel proceeded to question Cronin so as to further explain the answers he had given on cross-examination. The trial court, reminding defendants' counsel that he was not putting in his defense at this time, limited the witness, Cronin, to answering such questions put to him by defendants' counsel as were "designed to explain answers previously given." The witness, however, made the following statement, "I was in partnership with A. M. Breckenridge, Mr. Patterson and myself from about August, 1938, until January of 1939. At that time, Mr. Breckenridge withdrew from the Company, sold his interest to Mr. Hilquist, and then I was in partnership with Mr. Hilquist and Mr. Patterson from that time until, I would say, about the middle of May, 1939, at which time we dissolved our partnership."

Plaintiff's counsel thereupon stated, "I object to that last statement and ask that it be stricken from the record." Upon this objection the trial judge ruled that "the last portion of witness' statement in which he volunteers information concerning dissolution of partnership is stricken from the record, and the jury is instructed to disregard it at this time."

At the conclusion of plaintiff's case, Patterson and Cronin filed separate motions for a compulsory nonsuit which were granted by the trial court. After argument before the court en banc, motions to take off the compulsory nonsuits were refused. This appeal followed.

In refusing plaintiff's motion to take off the com-

pulsory nonsuit, the opinion of the court below, written by McDonald, J., who sat as the trial judge, stated that had the plaintiff stopped after producing evidence of the existence of the partnership on March 3, March 31 and April 18, (14) 1939, "it should have been permitted to go to the jury upon the presumption that the partnership which existed April 18 (14) still existed on June 1, because a partnership once shown to exist is presumed to continue for a reasonable length of time,—or until the contrary is proved: *Dinger v. Friedman,* 279 Pa. 8." The opinion of the court, however, proceeded to justify the granting of the nonsuit on the ground that Cronin's testimony showed "that the defendants, Patterson and Cronin, were partners in the Pittsburgh House Insulating Company until—*and only until*—the middle of May, 1939, and that the transaction for which suit is brought occurred in the month of June, 1939."

Aside from the testimony given by the witness, Cronin there can be no question, and in this respect we agree with the court below, that the evidence produced by plaintiff as to the existence of the partnership on March 3, March 31 and April 14, 1939, was sufficient to entitle the plaintiff to go to the jury on the issue of the partnership's existence on June 1, 1939. But, as we read the testimony of Cronin contained in the record before us, we fail to find any statement that the defendants had been partners in the defendant company "only" until May, 1939. Before Cronin gave the testimony, the interpretation of which is disputed, the court had limited him to the explanation of answers previously given. Those answers involved only questions relating to the partnership's existence on March 3, and March 31, 1939. At the conclusion of Cronin's statement exceeding the scope of examination set by the trial judge, the latter, upon objection by plaintiff's counsel, ordered that portion of the testimony stricken from the record,

which concerned the dissolution of the partnership. Despite these proceedings, appearing in the record, the court below interpreted the testimony of Cronin just as though no portion thereof had been stricken, and consequently, granted the nonsuit. In view of the limitation, imposed upon the witness prior to the giving of his testimony and in view of the order striking from the record, the portion thereof concerning dissolution, the interpretation placed upon the remaining testimony by the court below cannot be said to have been warranted. It is our opinion that the evidence produced by plaintiff was sufficient to warrant its submission to the jury on the issue of the partnership's existence on June 1, 1939.

There is, moreover, an additional and more serious objection to the action of the court below in granting a compulsory nonsuit. This objection, granting the validity of the lower court's position with reference to the interpretation of Cronin's testimony, concerns itself with the question of knowledge or notice to plaintiff of the partnership's dissolution.

The Act of March 26, 1915, P. L. 18, part VI, Section 35 as amended by the Act of April 13, 1917, P. L. 79, Section 1 (59 PS 97) provides in part as follows: "(1) After dissolution a partner can bind the partnership, ...... (b) by any transaction which would bind the partnership if dissolution had not taken place; provided the other party to the transaction ...... (II) Though he had not so extended credit had nevertheless known of the partnership prior to dissolution, and having no knowledge or notice of dissolution, and the fact of dissolution had not been advertised in a newspaper of general circulation in the place (or in each place, if more than one), at which the partnership business was regularly carried on, and in the legal periodical, if any, designated by rule of court in such place or places for the publication of legal notices."

It is undisputed that, from January to March 31, 1939, Patterson, Hilquist and Cronin were partners doing business as the Insulating Company and that, on June 1, 1939, plaintiff entered into a contract with the company acting through the agency of Hilquist. The affirmative defense of Patterson and Cronin to the liability arising out of the contract, appearing in their affidavits of defense is, that there was no partnership in existence on the date of that contract, and Cronin's affidavit of defense affirmatively avers a dissolution prior to that date.

Plaintiff, through its agent, had contacted the partnership as a partnership during the admitted period of its existence. The agent solicited business from each of the three partners. He discussed prices with Patterson, and he discussed advertising sales help with Cronin. Plaintiff obtained a contract after the date of the alleged dissolution, executed by Hilquist on behalf of the firm.

Prior to the enactment of the Uniform Partnership Act, above cited, the rule in this jurisdiction as to notice of dissolution was as stated in *Watkinson v. The Bank of Pennsylvania*, 4 Wharton 481, 483: "......notice of the dissolution of the partnership, given in a newspaper printed in the city or county, where the partnership business is carried on, is of itself notice to all persons who have had no previous dealing with the partnership. But as to persons who have had such previous dealing with the partnership, it is not sufficient. It must be shown that actual notice of the dissolution was communicated to the party in some way or other." See, also, *Robinson v. Floyd et al.*, 159 Pa. 165, 28 A. 258. The Act of 1915, as amended, supra, changed the law of this state by making advertisement of the fact of dissolution sufficient notice, but retained the requirement of knowledge or notice of dissolution as a necessary

condition of relief from liability on the part of a member of a previously existing partnership.

In *Howe v. Thayer*, 17 Pick. (Mass.) 91, it was held that if plaintiff establishes a prima facie case against defendant as a member of a partnership, the burden is on the defendant to prove his defense that there was a dissolution of the partnership as it regarded himself, and notice thereof to plaintiff before the debt was incurred: See, also, *Newcomet v. Brotzman*, 69 Pa. 185.

In the instant case, there is no evidence that plaintiff had notice or knowledge of the alleged dissolution of the partnership. Until such fact is affirmatively shown, or until it is shown that the proper notice had been published in accordance with the Act of 1915, as amended, supra, the defendants, Patterson and Cronin are bound by the act of the defendant, Hilquist, notwithstanding the alleged dissolution.

The order of the court below is reversed and a venire facias de novo granted.